IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| BRAIN CANDY MANAGEMENT, LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JEFFREY MILLER, individually, and ) <br> d/b/a MILLER MANAGEMENT, ) <br> ) <br> Defendant. ) | Case No. <br><br> JURY DEMAND |

## COMPLAINT

Plaintiff files this Complaint for breach of contract and intentional infringement of its valuable intellectual property rights.

### I.  THE PARTIES

1. Plaintiff, Brain Candy Management, LLC ("Brain Candy"), is a Tennessee limited liability company with its principal place of business in this District. Plaintiff is the owner of the trademark "Brain Candy" and the associated design mark in connection with its management, product design, marketing, video, branding, distribution, booking assistance, publishing, PR assistance, and music production and distribution services.

2. Defendant, Jeffrey Miller, is a Wisconsin based singer and songwriter as well as the front man and owner of the Wisconsin-based band named "The Jeff Miller Band." Jeffrey Miller is also the owner of "Miller Management". Mr. Miller advertises his products and services on his website (www.thejeffmillerband.com) as well as through physical sales and advertisement at shows and venues.

## II. JURISDICTION AND VENUE

3. This Court has subject-matter jurisdiction of this cause under 28 U.S.C. §§ 1331 and 1338(a) because it arises under the Lanham Act.

4. This Court has personal jurisdiction over Defendant because he is conducting business in the State of Tennessee, has caused injury to Plaintiff in Tennessee, and has otherwise availed himself of the jurisdiction of this Court.

5. This Court has supplemental jurisdiction over the breach of contract, declaratory judgment, and Tennessee Consumer Protection Act claims in this matter because they arise out of the same transaction and/or occurrence related to Defendant's business conducted in the State of Tennessee.

6. Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in this judicial district, and Defendant is subject to personal jurisdiction in this district.

## III. FACTUAL ALLEGATIONS

### A. The Parties' Business Relationship

7. On or about April 13, 2022, Defendant Jeffrey Miller engaged Plaintiff to provide certain services set forth in a "Services Retainer Proposal" ("Proposal"), including, but not limited to, management, product design, marketing, video, branding, and distribution. A true and accurate copy of the Services Retainer Proposal is annexed hereto as **Exhibit 1**.

8. Thereafter, the parties worked together from April 2022 until approximately May 2023.

9. During that period, Defendant paid Plaintiff monthly for services rendered pursuant to the Proposal.

10. On or about March 10, 2023, as contemplated by subsection (e) of the Proposal, the parties executed a Distribution Agreement wherein Defendant agreed to grant Plaintiff exclusive rights to the sale, licensing, and distribution of his recordings and associated materials. A true and accurate copy of the Distribution Agreement is annexed hereto as **Exhibit 2**.

11. On or about May 1, 2023, the parties mutually agreed to terminate the Distribution Agreement.

12. At this time, the parties agreed that Plaintiff would provide social media services and minor web edits for the remainder of the month of May but that the parties would otherwise cease working together.

13. On May 23, 2023, the parties engaged in a lengthy telephone conversation to negotiate a mutual settlement in good faith. At the end of the call, the parties reached an agreement on all material terms of the settlement, including a $3,000.00 payment to Mr. Miller, mutual releases for claims arising out of the parties' business relationship to date, a "no contact" agreement, and mutual non-disparagement.

14. The parties then memorialized their agreement via a written settlement agreement, including a provision that provides, "Miller shall do nothing to suggest or imply any affiliation or association between [Plaintiff] and Miller, nor any endorsement by [Plaintiff] of Miller or his business, music, or other endeavors." A true and accurate copy of the settlement agreement ("Settlement Agreement") is annexed hereto as **Exhibit 3**.

15. Defendant acknowledged receipt of the Settlement Agreement on June 6, 2023, however he has refused to execute or abide by the same. To the contrary, Defendant has taken the position that the parties' agreement is not binding.

16. Additionally, in July and August of 2023, Defendant made false "fraud" claims with either his bank or QuickBooks, the payment processer through which he previously paid Plaintiff for its services.

17. As a result, QuickBooks has put "on hold" $14,300.00 in Plaintiff's account, debited the account in the amount of $11,374.75, and, upon information and belief, paid that sum to Defendant.

18. By retracting this money that is lawfully owed to Plaintiff for services rendered, Plaintiff incurred further damages, including chargeback fees and withholding charges from QuickBooks.

B. **Defendant's Trademark Infringement**

19. Plaintiff is the owner of the common law and federal trademarks for "Brain Candy Management" and the following design mark:



20. "Brain Candy Management" is the subject of federal registration number 5265506, in connection with "Management of performing and recording artists."

21. The design mark is the subject of federal registration number 5358339 in connection with "Management of performing and recording artists."

22. At some point in 2023, Defendant began selling and advertising his own services using Plaintiff's trademarks.

23. For instance, in August 2023, Defendant caused to be printed and distributed an album by an artist called "RR Tut the Poetic Emcee"—an artist Defendant manages. Defendant included Plaintiff's trademark on the back cover of the album and on the CD itself, as follows:





24. Defendant's actions are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Plaintiff with Defendant or his clients, and as to the origin, sponsorship, or approval of Defendant's goods or services by Plaintiff.

25. As a result of Defendant's actions, Plaintiff has been damaged and has suffered an ascertainable loss.

26. Defendant's unlawful conduct, as set forth above, was deliberate, intentional, knowing, and willful.

### IV. CAUSES OF ACTION

**Count 1 – Breach of Contract/Money Had and Received (Services Retainer Proposal)**

27. Plaintiff sues Defendant for breach of contract and for money had and received.

28. Defendant agreed to pay Plaintiff for various services pursuant to the Proposal.

29. Defendant did in fact pay Plaintiff for those services.

30. Then, Defendant "clawed back" at least $11,374.75 of the monies paid to Plaintiff through false "fraud" claims he submitted to QuickBooks.

31. Of the original amount Defendant paid to Plaintiff pursuant to the Proposal for services rendered, Defendant is in possession of at least $11,374.75 of Plaintiff's funds and has refused to return the same.

32. Defendant is exercising control over Plaintiff's funds by fraud, duress, or other inequitable means.

33. Plaintiff has been damaged by Defendant's conduct.

34. It would be inequitable for Defendant to keep Plaintiff's funds.

### Count 2 – Breach of Contract (Settlement Agreement)

35. Plaintiff sues Defendant for breach of the Settlement Agreement.

36. By using Plaintiff's name, Defendant has suggested or implied an affiliation or association between Plaintiff and Defendant and/or any endorsement by Plaintiff of Defendant or his business, music, or other endeavors, all in violation of paragraph 3(b) of the Settlement Agreement.

37. As a result of Defendant's actions, Plaintiff has been damaged.

### Count 3 – Declaratory Judgment (Settlement Agreement)

38. Pursuant 28 U.S.C. § 2201, Plaintiff seeks a declaratory judgment as follows:

    a. the oral agreement reached by the parties via phone on May 23, 2023 is a valid and enforceable agreement;

    b. the Settlement Agreement attached hereto as Exhibit 3 memorializes the parties' oral agreement.

## Count 4 – Lanham Act and Tennessee Consumer Protection Act Violations

39. Plaintiff sues Defendant for violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-104(b)(2) and (3) for causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of Defendant's products and services and for causing likelihood of confusion or misunderstanding as to the affiliation, connection or association with, or certification by, Plaintiff with Defendant; and for violation of the Lanham Act, 15 U.S.C. § 1125(a).

**WHEREFORE**, Plaintiff demands:

1. A jury of six (6) to try this case;

2. Compensatory damages of at least $25,000.00 or an amount the jury deems fair and reasonable;

3. Declaratory judgment, as set forth above;

4. All available remedies under the Lanham Act, including, without limitation, an injunction, actual damages, an accounting and disgorgement of Defendant's profits, impoundment and destruction of the infringing articles, costs, and expenses;

5. Treble damages pursuant to Tenn. Code Ann. § 47-18-109(a)(3) and Tenn. Code Ann. § 47-18-109(e);

6. Attorneys' fees pursuant to paragraph 5(n) of the Settlement Agreement and/or Tenn. Code Ann. § 47-18-109(a)(3) and Tenn. Code Ann. § 47-18-109(e) and/or the Lanham Act;

7. Punitive damages for Defendant's intentional, fraudulent, malicious, or reckless conduct, as set forth above;

8. Pre- and post-judgment interest;

9. That Plaintiff be awarded such other and further relief as is just.

Respectfully submitted,

/s Michael A. Johnson
Michael A. Johnson (#30210)
KAY GRIFFIN EVANS, PLLC
222 Second Ave. North, Suite 340-M
Nashville, TN 37201
(615) 742-4800
mjohnson@kaygriffin.com
*Attorneys for Plaintiff*